# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| THURMAN P. BRYANT, III, and BRYANT UNITED CAPITAL FUNDING, INC. | § § § § | Civil Action No. 4:17-CV-00336 Judge Mazzant |
| Defendants, | § § § | |
| ARTHUR F. WAMMEL, WAMMEL GROUP, LLC, THURMAN P BRYANT, JR., and CARLOS GOODSPEED a/k/a SEAN PHILLIPS d/b/a TOP AGENT ENTERTAINMENT d/b/a MR. TOP AGENT ENTERTAINMENT | § § § § § § § § | |
| Relief Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Thurman P. Bryant, III, and Bryant United Capital Funding, Inc.'s Motion to Dissolve Temporary Restraining Order[1] and Suspend or Dissolve Order Appointing Receiver (Dkt. #97). After reviewing the relevant pleadings, motions, and evidence, the Court finds the motion to dissolve the preliminary injunction and suspend or dissolve the order appointing receiver should be denied.

## BACKGROUND

Thurman P. Bryant, III ("Bryant") is the President and CEO of Bryant United Capital Funding, Inc. ("Bryant Capital") (collectively, "Bryant Defendants"). Bryant Capital offered

---

[1] A preliminary injunction, not a temporary restraining order, is in effect, so the Court will determine whether to dissolve the Agreed Order Granting Preliminary Injunction (Dkt. #27).

investors an investment opportunity in which Bryant Defendants promised that investors' money would be placed in a "secured escrow account" and would earn annual returns of 30% (or 2.5% per month). As part of the investment scheme, Bryant Capital partnered with Wammel Group, LLC ("Wammel Group"), which in turn invested Bryant Capital funds in a number of investments. Wammel Group is wholly owned and operated by Arthur F. Wammel ("Wammel") (collectively, "Wammel Parties"). Each month, Wammel Group would distribute funds back to Bryant Capital as returns.[2] Bryant and Wammel agreed that they would share equally in any returns greater than the 30% annual rate. Bryant expected Wammel to return greater than 30% on a regular basis; otherwise, Bryant would not make a profit.

From June 2011 through April 2017, Bryant Capital received approximately $22.7 million from approximately 100 investors. Of that money, Bryant Capital transferred more than $16.2 million to Wammel Group as principal for investments. On August 3, 2017, Bryant testified that he did not know how Wammel was investing the funds, but he did understand that the funds would be in a "hedge" for the benefit of the group. Wammel Group held a Wells Fargo account in which it commingled funds obtained from Bryant Capital investors with funds obtained from Wammel Group investors. Wammel Group then placed these funds into at least two investment accounts: OptionsXpress and TD Ameritrade. Each month, Wammel Group withdrew funds from the investment accounts, placed them in the Wells Fargo account, and then transferred them to Bryant Capital.

---

[2] Numerous transfers between Bryant Defendants and Wammel Group actually appear as Bryant United Holdings, Inc. ("Bryant United"). After reviewing the numerous account and activity statements for Bryant United, Bryant Capital, and Wammel Group, the Receiver's retained forensic accountant, Brandi Kleinman, determined that Bryant United and Bryant Capital were essentially the same entity. Without deciding whether these entities are alter egos of each other, it is sufficient for the Court to look past any distinction. Further, any distinction does not affect the Receivership Estate.

Investments made by Wammel Group struggled to earn the required 2.5% monthly returns. Based on the agreement with Bryant Capital, Wammel Group should have earned $11.8 million in returns for Bryan Capital from 2011 to 2017. Wammel Group distributed to Bryant Capital $15.9 million purportedly as returns. In reality, Wammel Group's performance in the market varied wildly, and over those six years it received only $5.9 million from trading. On April 30, 2017, Wammel Group had total account values across all of its accounts of approximately $1 million. Since then, Wammel Group OptionsXpress account lost approximately $200,000 and was closed by OptionsXpress.

Despite clear deficiencies in returns, Wammel Group distributed approximately 3% monthly returns and significant profits for Wammel and Bryant. To do this, Wammel Group used funds from other sources. While Wammel Group did produce account statements with divisions of assets held in the account, the Receiver's forensic accountant, Brandi Kleinman, testified that Bryant Capital funds were in fact commingled with funds from Wammel Group investors.

Because Wammel Group was not earning enough to make its payouts, Wammel falsified documents that he sent to Bryant Capital and to investors to appear as if Wammel Group's investments were successful. Despite operating at a loss, Wammel Group distributed large incomes to Wammel and to Bryant, individually. Combined, Wammel and Bryant profited by approximately $10 million.

Between January and March 2017, Bryant and Bryant Capital transferred $1.37 million of new and existing funds to Goodspeed, a purported concert promoter and booking agent for well-known entertainers. In April 2017, Bryant and Bryant capital diverted $140,000 of investor monies to Bryant's father, an early Bryant Capital investor.

On May 15, 2017, the Securities and Exchange Commission ("SEC") filed a complaint against Bryant and Bryant Capital alleging securities fraud in connection with a series of interrelated Ponzi schemes operated by Bryant and the Wammel Parties (Dkt. #1). On May 15, 2017, the Court entered an order appointing a receiver over Bryant and Bryant Capital ("Receivership Order") (Dkt. #17). The Receivership Order gave Receiver exclusive jurisdiction to marshal, conserve, hold, and operate all of the Defendants' assets. Also on May 15, 2017, the Court entered an temporary restraining order enjoining the Bryant Defendants from violating the antifraud provisions of the federal securities laws and freezing their assets, and setting a hearing for the matter on May 30, 2017 (Dtk. #16).

On May 26, 2017, Plaintiff, joined by Bryant Defendants, filed an Agreed Motion to Extend Temporary Restraining Order (Dkt. #23). The same day, the Court entered an order extending the temporary order, setting a hearing for June 2, 2017. On June 2, 2017, the SEC filed an Unopposed Motion to Enter Agreed Preliminary Injunction, which included as attachments Bryant Defendants' executed consents to an Order Granting Preliminary Injunction (Dkt. #26, Exhibit B, Exhibit C). The same day, the Court entered an Agreed Order Granting Preliminary Injunction and Other Relief (Dkt. #27). On July 19, 2017, the Court amended the Receivership Order to include the assets of the Wammel Parties (Dkt. #48). On August 23, 2017, the Court granted Receiver's motion(s) for orders authorizing the liquidation of certain Receivership assets (Dkt. #105; Dkt. #106). On August 21, 2017, Bryant Defendants filed a Motion to Dissolve Temporary Restraining Order and Motion to Suspend or Dissolve Order Appointing Receiver (Dkt. #97). On September 5, 2017, Plaintiff filed a response (Dkt. #112) and Receiver filed a response (Dkt. #113).

## LEGAL STANDARD

It is appropriate to modify an injunction under Federal Rule of Civil Procedure 60(b)(5) if a party can show "a significant change either in factual conditions or in law." *Agostini v. Felton,* 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *see also Cooper v. Texas Alcoholic Beverage Comm'n*, 820 F.3d 730, 741 (5th Cir. 2016). It is insufficient to show that the enjoined party would be "better off" if the injunction is lifted. The enjoined party must show "hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression." *U.S. v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932); *see also Valentine Sugars, Inc. v. Sudan,* 34 F.3d 320, 322 (5th Cir. 1994) (changes in business conditions from additional licensing not "new and unforeseen").

## ANALYSIS

As a preliminary matter, Bryant Defendants expressly consented to the entry of an agreed preliminary injunction against them (Dkt. #26, Exhibit B, Exhibit C).[3] Moreover, Bryant Defendants provide no evidence supporting their motion, nor do they argue changed circumstances or additional facts not previously available to the Court. In moving a court to dissolve a preliminary injunction it previously entered, "the moving party must make a strong evidentiary showing." *Fiber Sys. Int'l, Inc. v. Applied Optical Sys., Inc.*, No. 2:06-CV-473, 2009 WL 8590962, at *2 (E.D. Tex. June 24, 2009) (citing *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932) (requiring "[n]othing less than a clear showing of grievous wrong evoked by new and unforeseen conditions . . .")). There has been no such showing in this case and for this reason, the Court finds the motion to dissolve the preliminary injunction should be denied.

---

[3] In the consents, both Bryant and Bryant Capital waived the right to a hearing, waived the right to appeal from the entry of the Agreed Order, and agreed to not oppose the enforcement of the Agreed Order on the ground that it fails to comply with Rule 65(d) (Dtk. #26, Exhibit B at ¶¶ 3, 4, & 7; Exhibit C at ¶¶ 3, 4, & 7).

Bryant Defendants further argue that the Court should suspend or dissolve the order appointing the Receiver. A district court has broad authority to enforce its orders and to protect assets in a receivership. *SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 340 (5th Cir. 2011) (citing *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985)). "Such orders can serve as an important tool permitting a district court to prevent dissipation of property or assets . . . ." *Schauss*, 757 F.2d at 654 (citing *W. Gulf Mar. Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985)). Finally, these orders may be effective against non-parties or parties joined only as relief defendants. *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009); *Schauss*, 757 F.2d at 654. "'[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.'" *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (quoting *Safety Fin. Serv.*, 674 F.2d 368, 372-73 (5th Cir. 1982)). "These powers include the court's 'inherent equitable authority to issue a variety of "ancillary relief" measures in actions brought by the SEC to enforce the federal securities laws.'" *Id.* (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)).

Bryant Defendants argue that the Receivership does not benefit the Plaintiff's interest and presents an undue and unwarranted burden on Bryant. Additionally, Defendants argue that the Receiver has overstepped her authority by seizing many assets and accounts beyond her purview.

The purpose of a receivership is to marshal and protect assets so that they are available to pay disgorgement orders and civil penalties. *SEC v. Brooks*, No. Civ.A.3:99–CV–1326–D, 1999 WL 493052, at *2 (N.D. Tex. July 12, 1999). The Receivership Estate was created for the benefit of the investors in Bryant Capital and the Wammel Group. The Court finds that the continuation of the Receivership is necessary to collect, marshal, and preserve the assets of the Receivership Estate, and a less restrictive measure would not sufficiently protect the Government's

interest.  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 62, 114 S. Ct. 492, 505, 126 L. Ed. 2d 490 (1993).  Furthermore, the Court finds no evidence that the Receiver overstepped the authority of the Receivership Order.

## CONCLUSION

It is therefore **ORDERED** that the Bryant Defendants' Motion to Dissolve Temporary Restraining Order and Suspend or Dissolve Order Appointing Receiver (Dkt. #97) is hereby **DENIED**.

It is further **ORDERED** that unless terminated earlier, this preliminary injunction shall expire upon the issuance of a final decision by the Court in this case.

It is further **ORDERED** that unless terminated earlier, the Receivership in place shall expire upon the issuance of a final decision by the Court in this case.

**IT IS SO ORDERED**.

SIGNED this 4th day of October, 2017.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE