# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § | |
| | | Civil Action No. 4:17-CV-00336 |
| v. | | Judge Mazzant |
| | § § § § § § § § § | |
| THURMAN P. BRYANT III, BRYANT UNITED CAPITAL FUNDING, INC., ARTHUR F. WAMMEL, WAMMEL GROUP, LLC, THURMAN P. BRYANT JR., and CARLOS GOODSPEED. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Liquidate Property and Void or Clarify Contract for Deed (Dkt. #298) filed by Jennifer Ecklund, the Court-appointed receiver (the "Receiver") for Defendants Arthur F. Wammel, Wammel Group, LLC, and Wammel Group Holdings Partnership receivership estates (collectively, the "Receivership"). The Receiver is seeking permission to liquidate the real property located at 8101 South Humble Road, Texas City 77591 (the "Property"). The Receiver contends that the Property belongs to, and should be liquidated for the benefit of, the Receivership because of alleged fraudulent transfers between Wammel and Ancillary Defendant Stephen Garrett. Garrett maintains that he is the owner of the Property and contests liquidation. The Court, having reviewed the motion, Parties' briefings, and relevant evidence, finds that the Receiver has not shown that she has the right to force the liquidation of the Property; however, the Court will allow the Parties to conduct limited discovery for the purpose of ascertaining the true nature of the parties' respective interests therein.

**BACKGROUND**

Garrett has known Wammel since he was a child. At some point, Wammel approached Garrett and urged him to invest in his business—an investment fund operating, in part, under Wammel Group LLC.[1] Garrett was hesitant to invest with Wammel and refrained from doing so for a few years. Garrett was initially hesitant to invest with Wammel and refrained from doing so for a number of years; however, in 2012, Garrett decided to go forward with Wammel's proposition. Although now interested, Garrett had issues with cash flow and did not have the liquid capital on hand to invest. Garrett attempted to pull equity from the Property, which he had purchased out-right on May 15, 2012, but was unsuccessful because traditional financial institutions declined to extend a collateralized loan on a home that had not been owned for at least twenty-four months.

In February 2012, Garrett contacted Wammel for assistance in securing a loan. Thereafter, Garrett and Wammel entered into an agreement wherein Garrett would be able to pull equity from his home and use the proceeds, in part, to invest with Wammel. In early 2013, Garrett agreed to sell the Property to Wammel for $902,000.00, with $180,400.00 being seller financed and the remaining $811,000.00 financed by a third-party.

In February 2013, to finance the sale of the Property, Wammel obtained a mortgage loan through Associated Mortgage Investors ("AMI"). On the loan application, Wammel falsely certified that the Property would be used as his "Primary Residence." On April 10, 2013, Wammel and AMI finalized the financing agreement. Later that month, Garrett sold the Property to Wammel through a General Warranty Deed.

---

[1] Wammel was convicted of conspiring to commit wire through a scheme in which Bryant would, with Wammel's knowledge, solicit investments from individuals by making materially false statements and representations about guaranteed rates of return, the security of the investors' principal, and the nature by which the investment funds would be maintained.

On May 3, 2013, Garrett entered into a Wammel Group General Partnership Agreement and used the proceeds from the sale of the Property to invest $226,000.00 with Wammel Group. Garrett ultimately invested at least $600,000.00 with the Wammel Group.

On May 16, 2013, Wammel and Garrett executed a Contract for Deed, whereby Wammel agreed to sell and Garrett agreed to purchase back the Property for $902,000.00 with interest.

On May 15, 2017, the Securities and Exchange Commission ("SEC") filed a complaint against Defendants alleging securities fraud in connection with a series of interrelated Ponzi schemes (Dkt. #1). On May 15, 2017, the Court entered an order appointing a receiver over Defendents Bryant and Bryant Capital (Dkt. #17). The Receivership Order gave Receiver exclusive jurisdiction to marshal, conserve, hold, and operate all of the Defendants' assets. Also on May 15, 2017, the Court entered a temporary restraining order enjoining the Bryant Defendants from violating the antifraud provisions of the federal securities laws and freezing their assets ("Asset Freeze Order") (Dtk. #16).

On July 19, 2017, the Court entered an Amended Order Appointing the Receiver ("Receivership Order") (Dkt. #48) adding Defendants Wammel, Wammel Group, and WGHP to the jurisdiction of the Receiver. The Receivership Order directs the Receiver to "take custody, control, and possession of all Receivership Property and records relevant thereto from Receivership Defendants; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records thereto." The Receivership Order also authorizes the Receiver to "manage, control, operate, and maintain the Receivership Estates and hold in [her] possession, custody, and control all Receivership Property for the benefit of the Receivership Estates, making payments and disbursements, and incurring expenses as may be necessary or advisable . . . ."

Upon her appointment, the Receiver leaned that Wammel Group was listed on the title to the Property. In July 2017 the Receiver's counsel traveled to the Property and served the Receivership Order on Garrett, who occupied the Property. Garrett explained to the Receiver that "he sold the Property to the Wammel Group in 2013 . . . Wammel applied for a loan and financed the Property . . . Wammel and Ancillary Defendant Garrett entered into a Contract for Deed, and . . . pursuant to the Contract for Deed, Ancillary Defendant Garrett has been paying monthly the amount due under the loan to the Wammel Group and continued occupying the Property." (Dkt. #4).

On January 24, 2019, Receiver filed the present motion to liquidate the Property and void the Contract for Deed or, in the alternative, allow for discovery to clarify the validity of the Contract for Deed (Dkt. #298). On March 1, 2019, Garrett filed a response (Dkt. # 307). On March 8, 2019, the Receiver filed a reply (Dkt. #309).

## LEGAL STANDARD

28 U.S.C. § 754 (2018) provides that "a receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof."

Federal Rule of Civil Procedure 66 explains that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule."

The Receivership Order (Dkt. #48) also authorizes the Receiver to "manage, control, operate, and maintain the Receivership Estates and hold in [her] possession, custody, and control all Receivership Property for the benefit of the Receivership Estates, making payments and

4

disbursements, and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging [her] duties as Receiver."

## ANALYSIS

The Receiver's request to liquidate the Property requires the Court to discern the parties' respective interests, and rights that flow therefrom, arising out of the following transactions:

- Garrett acquired title to the Property when he purchased it in 2012.

- Garrett claimed the Property as his homestead.

- In April 2013, Garrett sold the Property to Wammel through a General Warranty Deed for $902,000.00, with $180,400.00 being seller financed and the remaining $811,000.00 financed by a third-party.

- On May 16, 2013, Wammel and Garrett executed a Contract for Deed, whereby Wammel agreed to sell and Garrett agreed to purchase the Property back for $902,000.00 with interest.

The Receiver argues that title to the Property is in the name of the Receivership and subject to liquidation pursuant to the controlling Receivership Order (Dkt. #48). The Receiver further avers that the May 16, 2013 Contract for Deed from Wammel to Garrett is void and does not confer Garrett any rights in the Property because the contract was executed through fraud. Specifically, the Receiver contends (1) Wammel and Garrett engaged in occupancy fraud/mortgage fraud in order obtained a mortgage on the Property, and (2) the straw-buyer purchase between Wammel and Garrett voids any claim that Garrett has to the Property. In the alternative, the Receiver asks that the Court grant the parties the opportunity to engage in limited discovery to clarify the Contract for Deed and its validity.

Garrett responds three-fold and argues that (1) Wammel does not have legal title to the Property because the April 2013 transfer of the Property by a General Warranty Deed was a pretended sale of a homestead, which is void under the Texas Constitution; and, in the alternative, (2) if Wammel did acquire title to the Property through the April 2013 General Warranty Deed, the Receiver's allegation of a fraud committed by Wammel cannot void the May 16, 2013 Contract for Deed because Garrett was not complicit in any illicit conduct; and (3) the Court adjudicating ownership of the Property on the Receiver's motion—that results in force liquidation—would deprive Garrett of due process. Garrett also request that if the Court is inclined to grant the Receiver's requested relief, the Parties be permitted to conduct limited discovery, followed by an evidentiary hearing on the matter.

The Court considers these arguments in turn.

**The Receiver Cannot Force Liquidation of the Property**

Garrett contends that the Property is his homestead and protected from forced sale or liquidation. The Receiver does not dispute that Garrett's owned the Property as his homestead at some point after the May 15, 2012 purchase; however, the Receiver argues that Garett alienated his homestead rights by conveying the Property to Wammel by the April 2013 General Warranty Deed. The Receiver also argues that Garrett's participation in fraud estops Garrett from asserting any homestead rights that he may have in the Property. The Court does not agree, as discussed herein.

A. **Homestead Protection**

The Texas Constitution affords homestead property "protection from forced sale, for the payment of all debts . . . ." Tex. Const. art. XVI, § 50(a). "Protection for homesteads in Texas is extensive." *Matter of Wiggains*, 848 F.3d 655, 664 (5th Cir. 2017) (citing *United States v.*

6

*Rodgers*, 461 U.S. 677, 711 (1983) ("The Texas homestead laws are almost absolute in their protections against forced sale."); *England v. FDIC*, 975 F.2d 1168, 1174 (5th Cir. 1992) ("Texas cases have consistently held that the fundamental purpose of the Texas homestead laws is to secure a place of residence against financial disaster."). The Texas Property Code further codifies these constitutional protections. *See* TEX. PROP. CODE § 41.002(a) (providing that "[a] homestead . . . [is] exempt from seizure for the claims of creditors," subject to an enumerated list of exceptions).

Thus, the Receiver cannot force liquidation of the Property unless Garrett relinquished his homestead rights.

### B. Alienating Homestead Rights by Conveyance

Although Texas provides extensive protection to homestead property, it is not absolute; indeed, in certain circumstances, homestead protection may be divested. *Resolution Trust Corp. v. Olivarez*, 29 F.3d 201, 207 (5th Cir. 1994) ("Abandonment and alienation of title have frequently been described as distinct methods of extinguishing a homestead interest.") (citing *United States v. Rodgers*, 461 U.S. 677, 686 (1983) (stating that Texas homestead exemption may not be divested "except by abandonment or a voluntary conveyance") (internal citations omitted); *Matter of Bradley*, 960 F.2d 502, 507 n. 8 (5th Cir. 1992) ("The only way for property to lose its homestead, after it has been dedicated as a homestead, is by death, abandonment or alienation.") (internal citations omitted); *Intertex, Inc. v. Kneisley*, 837 S.W.2d 136, 138 (Tex. App.—Houston [14th Dist.] 1992, writ denied) ("Th[e] conveyance was made on May 15, 1985. Upon this date, the property ceased being the Bealls' homestead. . . . The Texas case law is clear that a homestead property loses its homestead protection upon the death of the claimants, abandonment or alienation by them . . . .").

Garrett argues that he did not alienate homestead rights because the initial transfer of the Property to Wammel was a pretended sale and therefore void under the Texas Constitution. The Court agrees.

### i.  **Pretended Sale.**

A pretended sale is a conveyance of real property in which the parties do not intend for title to pass. Here, Garrett argues that the initial conveyance of the Property to Wammel was security for a loan that provided Garrett with the cash to invest with Wammel. That is, neither Garrett nor Wammel intended for title in the Property to pass.

Under the Texas Constitution, "pretended sales of the homestead involving any condition of defeasance are void." Tex. Const. art. XVI, § 50(c). A pretended sale of the homestead, therefore, cannot transfer legal title. *See Ortega v. LPP Mortg., Ltd.*, 160 S.W.3d 596 (Tex. App.—Corpus Christi 2005). The Texas Constitution, however, prohibits a pretended sale only if it includes a condition of defeasance.

"A condition of defeasance permits the seller to reclaim the title to the property conveyed after the loan is repaid." *Perry v. Dearing* (*In re Perry*), 345 F.3d 303, 311 (5th Cir. 2003) (applying Texas law); *see also Anglin v. Cisco Mortg. Loan Co.,* 141 S.W.2d 935, 938 (1940) (describing prohibited transaction where conveyance includes an understanding between grantor and grantee that "when the purported notes and deed had served their purpose, the homestead should be re-conveyed to the grantors"). The condition need not be expressly stated in the instrument of conveyance. *Id*. For example, a condition of defeasance may be: implied from other language in the conveyance, such as that it was made to secure the payment of a debt; or stated in a contemporaneous document, such as an option to repurchase on particular terms after the debt is

paid. *See Tittle v. Vanleer*, 89 Tex. 174, 34 S.W. 715, 722 (1896); *Mosher Steel & Mach. Co. v. Nash*, 6 S.W.2d 158, 162 (Tex. Civ. App.—Dallas 1928, writ dism'd w.o.j.).

"Ordinarily, once a party has made a prima facie showing of homestead status, the burden is on the opposing party to prove that status has terminated.*" Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d 802, 811 (Tex. App.—Houston [14th Dist] 2018). As in the present action, however, "[e]vidence that a deed has been signed, delivered, and recorded gives rise to a presumption that the grantor intended the deed to become operative as a conveyance." *Id*. The presumption, however, "may be overcome by showing . . . that the grantor had no intention of divesting himself of title." *Id*. The Court's inquiry must focus on "the grantor's intent . . . determined by examining all the facts and circumstances preceding, attending, and following execution of the deed." *Id*. Here, the Court finds that Garrett has overcome the presumption that the Parties that the intended for the General Warranty Deed from Garrett to Wammel.

It is undisputed that Garrett conveyed the Property to Wammel through a General Warranty Deed. Thus, for Garrett to show that the initial sale of the Property was a pretended sale and to overcome the presumption that Garrett intended for the General Warranty Deed to become operative as a conveyance, he must make a showing that: "(1) the seller did not intend title to vest in the purchaser; and (2) the transfer involves a condition allowing the seller to reclaim title to the property after the loan is repaid." *Paul & Partners*, 558 S.W.3d at 810 (citing *John T. Hardie & Co. v. Campbell*, 63 Tex. 292, 295 (1885) ("If it was the intention of the parties that the title was not to vest in appellants, but the object and intention was to secure them in the payment of a debt owing [buyer] by [seller], then the transaction would amount to a pretended sale involving a defeasance, which would render the deed invalid.").

Receiver argues that (1) Garrett has failed to prove the elements required to establish a pretended sale and (2) federal case law separates a fraudulent side agreement-homestead cases from "pure" homestead cases. The Court disagrees and finds that Garrett has, at least up to this point, sufficiently shown that the April 2013 conveyance of the Property to Wammel was a pretended sale.

The evidence in the record shows that Garrett wanted to invest in Wammel's business but did not have the liquid capital on hand to do so. Garrett attempted to pull equity out of the Property but was unable to secure a refinancing loan because he had not then owned the Property for two years. Garrett then sought the Wammel's assistance, who agreed to purchase the Property. This transaction provided Garrett with the cash on hand to invest with Wammel, which he ultimately did. Garrett never vacated the home and there are no allegations that Wammel requested such or occupied the Property himself.

Further, shortly after Garrett and Wammel executed the General Warranty Deed, the parties executed a Contract for Deed. A contract for deed is a form of real property conveyance in which the purchaser obtains an immediate right to possession but the seller retains legal title and has no obligation to transfer it unless and until the purchaser finishes paying the full purchase price, including associate fees and interest. *See Flores v. Millennium Interests*, Ltd., 185 S.W.3d 427, 429 (Tex. 2005) ("[e]xecutory contracts [are] also known as contracts for deed. A contract for deed, unlike a mortgage, allows the seller to retain title to the property until the purchaser has paid for the property in full."); *Reeder v. Curry*, 294 S.W.3d 851, 856 (Tex. App.—Dallas, 2009 pet. denied) ("[i]n an executory contract for the sale of land, such as the contract for deed in this case, the superior title remains with the seller until the purchaser fulfills its part of the contract" and "[i]f the purchaser defaults under the contract, the seller is entitled to possession of the property"); *Ward*

*v. Malone*, 115 S.W.3d 267, 270–71 (Tex. App.—Corpus Christi 2003, pet. denied) (stating that a "contract for deed is an agreement by a seller to deliver a deed to property once certain conditions have been met" and that it entitled the buyer to immediate possession, that the seller retains title until the purchase price is fully paid, and that the price is typically paid in installments over several years).

The subsequent Contract for Deed from Wammel conveying the Property back to Garrett further supports a showing that the initial conveyance of the Property part of a pretended sale. Again, the threshold question is the intentions of the parties. It is the purpose of a conveyance of the homestead that determines whether it is in fact an invalid pretended sale of the homestead. For example, a deed absolute on its face purporting to convey a homestead is void if intended as security for a loan. Additionally, where a husband and wife make an absolute deed of the homestead and the property is subsequently re-conveyed to them with a reservation of a lien for unpaid purchase money, if the true purpose for the transaction was to secure a loan of money to the husband and wife, it is a simulated sale of the homestead. The same is true where a deed is given and a pretended lease or agreement for the payment of installments is executed. *Mosher Steel & Machinery Co. v. Nash*, 6 S.W.2d 158 (Tex. Civ. App. Dallas 1928), writ dismissed w.o.j., (Dec. 5, 1928).

Further, the Court finds particularly perplexing the Receiver's first argument that Garrett has failed to prove the elements required to show a pretended sale, as it is contrary to the Receiver's theory as to why liquidation is proper. That is, the Receiver has consistently argued that, as set forth above, Wammel and Garrett executed the transfers of the Property for the purpose of Garrett obtaining liquid capital that he could then use to invest with Wammel—essentially, a loan secured

by the Property or a mortgage. The Receiver, however, argues that the transfers were done in a fraudulent manner that is not permitted under federal law. The Court turns to this argument.

### ii. Fraud Estopping a Homestead Claimant from Asserting Rights

The Receiver argues that Garrett is a party to a fraudulent side agreement and therefore federal and state case law preclude Garrett from invoking the protection of Texas homestead laws. The Receiver alleges that Garrett and Wammel's fraudulent scheme was in two parts: (1) occupancy fraud—a form of mortgage fraud that occurs when a borrower represents that a property will be his primary residence for the purpose of obtaining favorable loan terms and (2) misrepresentation by Wammel and Garrett in accomplishing the straw-buyer purchase amounts to wire fraud. More specifically, the Receiver contends that Wammel sought the mortgage and claimed an intent to pay the mortgage and live on the Property, but he actually financed the Property for Garrett who otherwise could not have qualified for the loan on his own. Wammel received a financial incentive for taking the loan in his name—interest and money (to invest in and keep his Ponzi scheme afloat) from Garrett.

Receiver cites to two Supreme Court decisions and one from the Fifth Circuit that she argues support her position that equitable principles preclude Garrett from asserting any homestead rights. *See D'Oench, Duhme & Co v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 458 (1942); *Deitrick v. Greaney*, 309 U.S. 190, 198 (1940); *Templin v. Weisgram*, 867 F.2d 240, 242 (5th Cir. 1989).

As a general matter, the doctrine of pretended sale provides that when a sale of a homestead occurs, whether by fraudulent representations or transfers, the sale will be treated as void and the homestead owner will not lose the protections afforded by the Texas Constitution. *Rubarts v. First Gibraltar Bank*, 896 F.2d 107, 115–16 (5th Cir. 1990). As the Receiver points out, however, courts

by the Property or a mortgage. The Receiver, however, argues that the transfers were done in a fraudulent manner that is not permitted under federal law. The Court turns to this argument.

### ii. Fraud Estopping a Homestead Claimant from Asserting Rights

The Receiver argues that Garrett is a party to a fraudulent side agreement and therefore federal and state case law preclude Garrett from invoking the protection of Texas homestead laws. The Receiver alleges that Garrett and Wammel's fraudulent scheme was in two parts: (1) occupancy fraud—a form of mortgage fraud that occurs when a borrower represents that a property will be his primary residence for the purpose of obtaining favorable loan terms and (2) misrepresentation by Wammel and Garrett in accomplishing the straw-buyer purchase amounts to wire fraud. More specifically, the Receiver contends that Wammel sought the mortgage and claimed an intent to pay the mortgage and live on the Property, but he actually financed the Property for Garrett who otherwise could not have qualified for the loan on his own. Wammel received a financial incentive for taking the loan in his name—interest and money (to invest in and keep his Ponzi scheme afloat) from Garrett.

Receiver cites to two Supreme Court decisions and one from the Fifth Circuit that she argues support her position that equitable principles preclude Garrett from asserting any homestead rights. *See D'Oench, Duhme & Co v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 458 (1942); *Deitrick v. Greaney*, 309 U.S. 190, 198 (1940); *Templin v. Weisgram*, 867 F.2d 240, 242 (5th Cir. 1989).

As a general matter, the doctrine of pretended sale provides that when a sale of a homestead occurs, whether by fraudulent representations or transfers, the sale will be treated as void and the homestead owner will not lose the protections afforded by the Texas Constitution. *Rubarts v. First Gibraltar Bank*, 896 F.2d 107, 115–16 (5th Cir. 1990). As the Receiver points out, however, courts

by the Property or a mortgage. The Receiver, however, argues that the transfers were done in a fraudulent manner that is not permitted under federal law. The Court turns to this argument.

### ii. Fraud Estopping a Homestead Claimant from Asserting Rights

The Receiver argues that Garrett is a party to a fraudulent side agreement and therefore federal and state case law preclude Garrett from invoking the protection of Texas homestead laws. The Receiver alleges that Garrett and Wammel's fraudulent scheme was in two parts: (1) occupancy fraud—a form of mortgage fraud that occurs when a borrower represents that a property will be his primary residence for the purpose of obtaining favorable loan terms and (2) misrepresentation by Wammel and Garrett in accomplishing the straw-buyer purchase amounts to wire fraud. More specifically, the Receiver contends that Wammel sought the mortgage and claimed an intent to pay the mortgage and live on the Property, but he actually financed the Property for Garrett who otherwise could not have qualified for the loan on his own. Wammel received a financial incentive for taking the loan in his name—interest and money (to invest in and keep his Ponzi scheme afloat) from Garrett.

Receiver cites to two Supreme Court decisions and one from the Fifth Circuit that she argues support her position that equitable principles preclude Garrett from asserting any homestead rights. *See D'Oench, Duhme & Co v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 458 (1942); *Deitrick v. Greaney*, 309 U.S. 190, 198 (1940); *Templin v. Weisgram*, 867 F.2d 240, 242 (5th Cir. 1989).

As a general matter, the doctrine of pretended sale provides that when a sale of a homestead occurs, whether by fraudulent representations or transfers, the sale will be treated as void and the homestead owner will not lose the protections afforded by the Texas Constitution. *Rubarts v. First Gibraltar Bank*, 896 F.2d 107, 115–16 (5th Cir. 1990). As the Receiver points out, however, courts

have found that, in certain circumstances, fraud precludes a homestead owner from asserting their homestead rights against certain parties—even if the homestead claimant was only a beneficiary of and not complicit in the fraud. The Court agrees that, in certain circumstances, equity demands that beneficiaries of fraud divest those benefits, even if they were not wrongdoers; however, the Receiver's reliance *on D'Oench, Deitrick*, and *Templin* is misplaced and the principles imparted in those cases are not applicable here.

First, Texas courts have explained that "the *D'Oench, Duhme* doctrine is a rule of estoppel that precludes a borrower from asserting defenses against the Federal Deposit Insurance Corporation and its assignees that are based on either secret or unrecorded agreements that alter the terms of an obligation." *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—Austin 2005, pet. denied) (*citing Bell & Murphy & Assocs. v. Interfirst Bank Gateway*, 894 F.2d 750, 753–54 (5th Cir. 1990). The purpose behind the *D'Oench, Duhme* doctrine is to allow federal and state bank examiners to rely on a failed bank's records in evaluating the bank's assets and to prevent fraudulent insertion of new terms into agreements. *Federal Deposit Ins. Corp. v. McFarland*, 33 F.3d 532, 536 (5th Cir.1994). In essence, the *D'Oench, Duhme* doctrine protects the Federal Deposit Insurance Corporation (FDIC) and not a party such as Wammel—or the Receiver.

Second, *Deitrick* expresses that "[i]t is a principle of the widest application that equity will not permit one to rely on his own wrongful act, as against those affected by it but who have not participated in it, to support his own asserted legal title or to defeat a remedy which except for his misconduct would not be available." *Deitrick*, 309 U.S. at 196. This is likewise not applicable present because there has not been a showing that Garrett has committed any wrongful act. The Receiver has not forward evidence, or alleged any facts, that suggest that Garrett was complicit in

any fraud committed by Wammel. It is generally understood that fraud is a crime of intent and that unknowing participants of fraud cannot not also be intentional perpetrators of fraud. The Receiver does not show or allege that Garrett knew about Wammel's false certifications in the mortgage loan application with AMI. At best, the evidence shows only that Garrett was either a direct victim of or unknowing facilitator of Wammel's fraud—not a wrongdoer. This holds constant as to the Receiver's implications that Garrett was complicit in Wammel and Bryant's Ponzi scheme solely because Garrett was a "winning investor" due to earning a profit. Again, being a beneficiary of fraud is not *per se* evidence of wrongful conduct. As previously mentioned, Wammel and Bryant's scheme was fraudulent because they lied to their investors about the nature of their investments. Simply because Garrett, and many others, ultimately received a profit from the Wammel's Ponzi scheme does not mean that they were not also victims of fraud. Indeed, it is common that early investors in a Ponzi scheme will yield profit because they are paid with the investments of later investors. The Court does not opine on Garrett's ultimate culpability, if any, in Wammel's Ponzi scheme; for the purposes of the present motion, however, the Receiver has not shown that Garrett was complicit as to preclude him from asserting his homestead rights in the Property.

Third, the *Templin* decision echoed the *D'Oench, Duhme* doctrine and the Receiver's reliance thereon fails for the reasons that the Court address above. *See Templin*, 867 F.2d at 241.

As discussed fully herein, the Parties' evidence and arguments up to this point show that neither Garrett nor Wammel intended for the General Warranty Deed from Garrett to Wammel to vest or for the transfer of the Property to be anything other than security for loan—a mortgage. Consequently, the General Warranty Deed and the subsequent Contract for Deed purporting to convey the Property back to Garrett from Wammel are void as they were executed pursuant to a

pretended sale, prohibited by the Texas Constitution. The Court, however, finds it appropriate to permit the Parties to conduct limited discovery as to the relevant facts and circumstances needed to ascertain the true nature of the Parties' respective interests and rights in the Property.

## CONCLUSION

It is therefore **ORDERED** that the Receiver's Motion to Liquidate Property and Void or Clarify Contract for Deed (Dkt. #298) is **GRANTED IN PART.** The Receiver is **NOT** permitted to liquidate the Property at this time. It is further **ORDERED** that on or before **Friday, August 30, 2019, at 5:00 p.m.,** the Parties are to meet, confer, and file as a motion before Court a proposed expedited discovery schedule.

It is further **ORDERED** that Garrett's Motion for Leave to File Late Sur-Reply in Excess of Page Limit (Dkt. #319) **AND** Receiver's Response to Defendant Garrett's Motion for Leave, Motion to Strike Garrett's Sur-Reply and/or, in the Alternative, Motion for Leave to Respond (Dkt. #328) are **BOTH DENIED AS MOOT.**[2]

**SIGNED this 19th day of August, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[2] Garrett moved for leave to file a sur-reply (Dkt. #319). The Receiver was initially unopposed to the request but later moved to strike Garrett's motion for leave because the sur-reply exceed the page limit. The Court did not consider Garrett's proposed sur-reply (Dkt. #320) in its decision set forth herein. Because the Court rejected the Receiver's request to liquidate the Property, Garrett's motion for leave to file a sur-reply and the Receiver's subsequent motion to strike are moot.